Good morning, your honors. May it please the court, my name is Leif Johnson for the United States. The district court in this case applied the safety valve erroneously, we believe for two reasons. First, that the defendant, as the court found, actively possessed a firearm during the commission of the offense. Second, that it applied an exception, a judicial exception, to a mandatory guideline enhancement, the organizer and leader enhancement. As to the first issue, we think this case stands for a simple principle, and that is that where the defendant actively possesses a firearm during the commission of an offense, then we're done. It doesn't matter, we don't need to inquire further as to the reasons for the firearm. And I see your response, Judge McKeon, and I want to explain that. I don't have any, I haven't said a word. I'm just thinking, listening. The Tenth Circuit explained this in the Zavala-Rodriguez case, and I think it's an excellent discussion of this sort of problem that we have between the burden for 2D1.1 and the safety valve. Can I just ask this question before you walk us through it? It's just a clear error, factual kind of finding, I mean there's no legal issue here, right? Yeah, it could be, it could be a clear error, factual error. I'm talking about, in this case, we've said you can thread that needle. Yes. And the district court had all these facts before it, and it said, yeah, Mr. Washington had threaded the needle. Why, isn't it just, you either have to show it's clear error or you lose, right? Because you can't thread the needle in an active possession case, and that's what the court discussed in Zavala-Rodriguez. But the court here, I mean, I don't, you keep saying active possessions. Yes. Seems to me the court was perfectly reasonable in saying, I don't really view it that way. I mean, they had the incident with the car, the incident where he answered the door, right? That's what you've got to work with, right? That's what we have, but we also have, so the court focused on passive possession issues, right? And that was what was at issue in Zavala-Rodriguez. The court has to interpret, in passive possession cases, what the relationship of the gun is to the offense, right? And in that context, it matters what the defendant has to say. So in a case of the gun's in the car and the drugs are in the trunk, the court has to interpret, well, what does that mean? And in that instance, it's relevant that the defendant says, well, I was going shooting, right? Okay, so let's take, let's divide these into two categories. I'm going shooting. Yes. And the gun, when he was counting the proceeds that he takes out of the safe and factually very different scenarios. Yes. Okay. On the ones having to do with the gun in the trunk, it seemed that he credited the testimony with, I'm going shooting, right? So to go your way, we would have to say that was clearly erroneous interpretation of, you know, clearly erroneous acceptance of the defendant's testimony. It was simply irrelevant, Your Honor. The court had already found that he went up the stairs with a gun in his hand to answer the door while counting the drugs. Are you hearing what I'm saying? I'm talking about the guns in the trunk first. And I am hearing what you're saying. It is clearly erroneous in the sense that it's entirely irrelevant because they've already established possession in connection with the offense. So it may very well be that on the instance when he was picked up by the police that he was going shooting that day. That very well may be the case. But it's clearly erroneous that the court concluded on that basis that there was no connection from this firearm to the offense. Do you see what I'm saying? No. I don't get that at all. In fact, what you're saying is that, okay, he says, well, there is a gun there. Yes. And the standard that he's using to make that is clearly improbable. Yes. Then he shifts over to the preponderance and he says, well, it's not clearly improbable, we're talking guns in trunk, that that would have been used for purposes of the crime, the drug dealing. Then he shifts to preponderance and he says, in effect, that the defendant's testimony is enough to show by a preponderance that it wasn't in connection with the drugs but was in connection with shooting. So why is that clearly erroneous? It was an error of law for the court to even inquire further after finding that the gun was actively possessed when he answered the door. That's the answer. You know what? I don't think you're listening. No, you're not listening. I've been talking about the trunk. Yes. Would you leave the door alone and we'll get to the door? Okay. Or do you want to just give up on the trunk and go to the door? Well, that sounds like it. And that's what it sounds like what you're doing. So I'm just, I'm trying to understand your argument. The essence of our argument. You're mixing and matching your burdens of proof and your. Yes. So what do you want to talk about? You want to talk about the gun in the trunk? You want to talk about the gun on the door? I think what you've stated is essentially the issue. While we believe it was highly improbable that the gun in the car wasn't connected to the offense, the court gets to make that determination. And it's clearly erroneous determination. So you're saying on that one you understand. You're setting that aside. Yes. Now we have the gun taken out of the safe. Yes. The judge mentions that in connection with the clearly improbable. But as I stated, he doesn't even, he failed to make a finding specifically on that point. Right. So my question is if we credit your argument, do we send it back to the judge to make that determination? Or what would be the procedural posture of the case? I think that the procedural posture of the case is that on the record as it does not apply. And so I think that the court would send this back for resentencing, but with direction that the safety valve does not apply on the basis that it made a finding of fact that precludes the safety valve. That would be my response. And remind me, and I'm of course going to ask Mr. Washington's counsel, what Mr. Washington, I didn't think there was much of an explanation on the house by him, unlike in the gun in the trunk situation. Is that right? Yes. And his client actually at the sentencing hearing denied that it happened. And that's an important issue here is that the court basically said that the court found it did happen. And that's really the only evidence. It wasn't really raised in the appellant's brief. On the organizer leader issue, just very briefly before I sit down, we believe that the court's finding of a judicial exception to a mandatory guideline was erroneous for several reasons. Under the Kuhn case, that simply does not give the court the authority to avoid the application of the guideline as the district court said. So that was an error of law. We don't think the court actually credited the meaning of the background commentary of the guideline in its full meaning. The commentary to further define the guideline, which we don't think was proper here, it didn't fully credit what the guideline commentary says. So with that, Your Honor, I'm going to reserve what time I have left. Let me just understand too, on the firearm issue and the leadership issue, those are either or. If either of those is present, then the safety valve goes out the door. Yes. Okay. Thank you. Good morning. May it please the court. My name is Kwame Manley on behalf of Mr. Jason Washington. Your Honors, you hit the issue directly. This court must apply a clear error standard in evaluating a factual determination as to whether my client, Mr. Washington, possessed firearms in connection with the offense for the safety valve. That's in the Ferryman case, 2006, clearly on point. I think the issue is under 2D1.1, the government has the burden first to determine whether the defendant possessed a firearm. And then the burden shifts to the defendant to say and to prove that it was not clearly improbable that the firearm was possessed in connection with the offense. Very different standard, frankly, much higher standard than safety valve on the 5C1.2 where the defendant has the burden to show just by a preponderance of the evidence that the firearm was not in connection with the offense. And I think that distinction, it's clearly laid out in the Nelson case in which this court reversed the district court for not applying those distinctions. Now let's go to the gun in the trunk and the gun out of the safe just so that we're crystal clear. Mr. Washington testified for several hours that he never possessed a firearm ever in connection with drug trafficking. That is in his testimony, in the record, he never ever possessed a firearm in connection with drug trafficking. This issue about a safe comes up with the testimony of a cooperator that was, in my view, clearly destroyed on cross-examination when he was making up stuff about how close he was, how he heard things at the door. That testimony was completely muddled. And I think, frankly, that was one of the reasons that the jury decided to find Mr. Washington not guilty of the 924C. Now, of course, that's a different standard and furtherance. I just want to put it out there that this is not a case where the facts are easy to determine. The facts are all over the place. Let me just stop you there because I'm not sure why you're walking us down this road. The district court found that he did go upstairs with the gun in his hand, right? The district court found that Mr. Washington did not prove that it was clearly improbable that his possession of a gun at the top was in connection with the offense. And I think that's vital because there was a lot of other testimony that his girlfriend was coming and there was a knock at the door late at night. It's very muddled as to whether that was in connection with the offense. But what the district court... But did the court really find, basically, he did answer the door with the gun while counting the proceeds? They found that with respect to the enhancement. I would disagree with that. If you read the paragraph, and it's only in one paragraph, I literally just read it before we started here. What the district court said is, I cannot find that it's clearly improbable. And then he listed three things. He did not say that I found that those things happened. He's saying that I didn't find it was clearly improbable that they didn't happen. And that's a very important distinction. And then what happens, though, is that when he goes to the second, the safety valve, it really does tick through Mr. Washington's testimony and how it relates to the guns in the trunk. But it seems to me he doesn't really address the gun at the door issue. Well, I would disagree. First of all, the district court doesn't... Does he ever say anything about the gun at the door specifically on round two under the preponderance standard? Not specifically. Okay. However, I would argue that that's not required, one. This court has said many times that the district court does not have to give each and every reason, does not have to tick through each and every fact. And you have to understand that the district court spent days in motions hearings, a full week at trial. He saw the testimony of 30 witnesses, saw all the other co-defendants in this case. And what the district court said correctly is that Mr. Washington has met his burden by a preponderance. Now, the government doesn't like that. The government thinks that they won by 51 percent and we lost by 49 percent. The district court said we won by at least 51 percent and the government lost by 49 percent. So when we're talking about these issues, yes, there is some evidence. And we're not saying we won by more than 51 percent. We don't have to win by more than 51 percent. There is some evidence. There's a cooperator who testified about this gun. I think that cooperator was damaged significantly. And Mr. Washington testified just the opposite. He said, I never possessed a firearm at the door while counting drug proceeds. And he also gave a good explanation. Look, I don't even know these cooperators that much. The cooperators were not even friends with each other for more than... What bothers me is that I don't think he really addresses the issue. Because the talk about gun and drugs being inadvertent really goes to the trunk. Because if it goes to the gun at the door, that would, of course, be in total contradiction of your client's testimony that there was no such thing that happened. So my concern is I don't think he actually addressed that aspect of it. In the district court or... In the district court. I mean, I know that Mr. Washington did. He said, no, it didn't happen. That's right. And I think the district court addressed it sufficiently. Clearly, I would have loved for the district court to have had a 30-page opinion about this, rejecting each and every witness that the government presented. The district court did reject most of the witnesses on this issue, but not everyone. So it is muddled. And I think in cases like this, as the Supreme Court has said, this court cannot reverse just because it doesn't have every single detail that you guys would have wanted if you were sitting on the district court. The reason that we have a clearly erroneous standard is because, as the Supreme Court has said, the sentencing judge is in the superior position to hear all the facts, to evaluate the testimony, to evaluate all the details. And this court should only reverse if it's clearly erroneous. And clearly, here, I would say it's not clearly erroneous. Transition to the role? Yes. With regard to the role, another example of why the district court is in the best position to handle this, this was a medical marijuana operation that was purchased by Mr. Washington. Steve Sani, co-defendant, who pled guilty, got probation, had this organization first. Mr. Washington put up money to buy the organization from Mr. San. Mr. San is the one, testimony at trial showed pretty clearly, that hired workers, that hired lawyers, that hired a whole team of people to get this up and running. Mr. Washington literally purchased the organization. He never suggested that Mr. San had some leadership role, ever. And I think that's very significant. In this case, the district court said, I'm looking at the degree of responsibility, the size of the organization. I'm looking at, as the guy... One of the concerns I have, and maybe you can just go to this, he had a legitimate marijuana business. Yes. He was also doing some illegal transactions or some things that are not permitted within the legal marijuana business, such as selling, you know, this non-patient and other caregivers and that sort of thing. So the district court talked about his overall organization, which he set up, and he got a bunch of lawyers and accountants, and that's perfectly legal to have such a thing. But what about all the stuff he did that isn't perfectly legal under the rubric of having a legal marijuana business? Well, I think we need to analyze all those in particular. Yes, the Montana law says you can only give a certain ounce or so or less to a patient. And yes, the testimony was that for some patients, he would give more than the ounce requirement. There was also some testimony that... Like go in, go out. At least one time, he said, okay, well, I can only give you a half an ounce now, but if you go out and come back in, and that's a second event, then I can give you another ounce. I would submit, Your Honors, that that is not exactly correct under state law, but that is not something that's so egregious that we have to change this case from what it is. One thing that's crystal clear about what the district court did, it completely rejected the government's view that this was some drug dealer, some mafia-style group, some, you know, on the corner, selling drugs, slinging heroin, cocaine, etc. And as a former AUSA, I reminded the court and reminded the jury that this is very different. So yes, there may have been times when he gave a little bit more than what the state required, but that doesn't change the nature of whether this was a leadership role in the context of the guidelines. Certainly doesn't change his degree of responsibility within the guidelines. Let me... Your time is almost up, and you haven't really addressed yet my question. I guess I see this operation, however you want to characterize it, as involving five or more participants in the way that the guidelines defines, right? Your client is certainly above those folks in the hierarchy of things, whether he's at the very top or a couple ticks down, who cares? So that if you just applied the plain language of 3B1.1, he would get the role enhancement. And what the district court said is, for policy reasons, I don't want to apply it because I have... This is a different kind of case that I don't think fits within the heartland. And I guess that just strikes me as almost lawless, unless there's some argument you can present as to why district court should have that range of discretion in deciding whether they feel like applying a particular sentencing guideline. Well, first of all, I don't think it's lawless. I think it was clearly appropriate for the district court to make the factual findings as to Mr. Washington in connection with the organizer leader role. I would submit that it's not sufficient just to have five people in a organization and someone to be above those five people. It goes to, as the district court emphasized and as the guidelines emphasize, the degree of responsibility, the size of the organization. Let me just tell you what my problem is. That is not what the district court emphasized. Didn't even mention, actually. I've read this now three times. The district court said nothing about the traditional 3B1.1 analysis. All it talked about is that this is a medical marijuana case and here are my policy reasons for thinking that the role enhancement shouldn't apply in that kind of case. And that, I mean, it's one thing for the district court to say, if we weren't in the safety valve context, I'm going to apply the enhancement but then I'm going to grant a departure. That's one thing. It's totally different to say, I just don't feel like applying this enhancement because it doesn't seem to me to fit this case and so therefore I'm just going to ignore it. And that seems to me what the district court did here. Well, Judge Wofford, I would respectfully disagree. I don't think the district court did it exactly as you suggested. The district court clearly looked at the commentary that defines what a leader and manager should be. He went through the elements of the Sentencing Guideline 3B1.1, the commentary, to see what are we supposed to be looking at. And he ticked through factors like degree of responsibility, size of organization, recidivism, likelihood of danger. The district court went through that analysis as he's required to do because the safety valve says it delegates the authority to define who falls, organize a leader, to the Sentencing Commission and the Sentencing Guideline. So what the district court was doing was not some policy exception. It almost was required to go through that analysis. And again, I would emphasize the district court doesn't have to say each and every factor and each and every rule. I think the district court... Let me just interrupt with one last question then in that regard. It seemed that in addition to the policy concern that Judge Wofford has, and I share that in the context of this case, but he also talked about this being outside the heartland. And it seemed to me he did that in the connection with calculating the guideline range, which would not really be an appropriate use of a heartland concept. Would you comment on that? I found the same thing. The heartland discussion in looking at Coon v. U.S. is concerning calculating the guideline range. I think I would separate that, Your Honor, from the analysis that the judge did with regard to leadership. He did mention the heartland. He did discuss those issues. But I think that was in a different context in terms of calculating the guideline range. Well, he wasn't talking about a departure. He was actually trying to calculate the range. I mean, so that's where it seems he was mixing and matching. Well, we asked for a departure. We asked for a departure, and we made the argument about outside the heartland. And I think the judge was responding to our arguments about outside the heartland and also some cases in the district court. Thank you. Appreciate your argument. Thank you very much. To return, Judge Watford, to your question, whether this is lawless or not, it was certainly not principled in the sense that there was no authoritative basis to do what the district court did here. It relied on Coon. Obviously, Coon, as you know, doesn't stand for the proposition that the court can avoid a district court. District courts have tried to avoid mandatory guidelines, and it has said they're not subject to discretionary avoidance. YEPES is one of them, but there are others that are out there. I would just add that one of the authorities that the district court cited here was this application note, too, that says to qualify for the guideline. And the court was relying on a district court case from California that said, you know, that only qualifies the defendant. And whether the guideline actually is applied is based on other policy considerations. The problem with that is it doesn't read the guideline correctly. Application note, too, applies to those cases where a defendant may have organizational control over stuff but not people. And that's where the application note applies. Let me jump back in. I was characterizing your argument when I said what the district court did here was lawless. That's your pitch, and I'm not sure I buy it. Because, look, the Congress in 3553F could have, as it did with the firearm enhancement, just pegged the standard itself. It instead chucked it basically to the guidelines, and it had to recognize that district courts were going to exercise some range of discretion in deciding whether a role enhancement should apply. So why wasn't the district court able to say, you know what? I've got the policy, you know, kind of the purpose of this enhancement is. I'm just finding on these facts that the purpose isn't met. And so, therefore, I, within the range of discretion that the sentencing commission has given me, I'm not going to apply it. Why isn't that proper? The district court is misreading the purpose provisions of the guidelines. The primary purpose of this guideline is assigning responsibility between parties in an organization. And, of course, the guideline itself has mandatory language. It applies based upon that hierarchical structure. And the district court made no findings as to the relative responsibility of the defendant here. Now, one of the reasons I think that the safety valve throws this issue off to the guidelines, which are mandatory, is because the safety valve was never meant to apply to hierarchical persons in a criminal structure. In other words, the safety valve was created to protect those underlings, the drug mules, the people who didn't have anything to negotiate with when they come to the government. And they're the people who get the harshest sentences. And that's why the safety valve was created. It wasn't made for the Jason Washingtons of the world, who are directing young people to do their bidding for them and getting them in trouble in the process. 3553 was set up to handle, or was not set up to handle, the person who is in charge of other persons in directing a criminal organization. Thank you. Thank you. The case of United States versus Washington is submitted. I'd like to thank both counsel for your briefing and argument in this case. Interesting question.
judges: Goodwin, McKeown, Watford